CADY, Chief Justice
(concurring specially).
I concur with the majority opinion but write separately to emphasize that, although the holding in this case is properly limited to its facts, neither the Supreme Court’s opinion in Miller v. Alabama, 567 U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), nor our decisions today in State v. Ragland, 836 N.W.2d 107 (Iowa 2013), and State v. Null, 836 N.W.2d 41 (Iowa 2013), express the full scope of the changing landscape of juvenile justice. This landscape should be observed by all judges and carefully considered when sentencing juvenile offenders as adults.
An obvious correlation exists between the life-without-parole context of Miller and Graham[6] and sentences that effectively deprive offenders of a meaningful opportunity for release in their lifetime. It comes as no surprise, then, that our decisions today recognize de facto life sentences very clearly exist. See Ragland, 836 N.W.2d at 109-26; Null, 836 N.W.2d at 45-87. Yet, applying the teachings of Roper,[7] Graham, and Miller only when mortality tables indicate the offender will likely die in prison without ever having the opportunity for release based on demonstrated maturity inadequately protects the juvenile’s constitutional rights.
Indeed, limiting the teachings and protections of these recent cases to only the harshest penalties known to law is as illogical as it is unjust. In Null, we thoroughly examined recent advances in neuroscience, which illustrate the decreased culpability of the juvenile offender. See Null, 836 N.W.2d at 54-55. While this logic has been applied in the context of the death penalty and life-without-parole sentences, it also applies, perhaps more so, in the context of lesser penalties as well. After all, as the Court declared in Miller, nothing that Graham “said about children — about their distinctive (and transitory) mental traits and environmental vulnerabilities — is crime-specific.” Miller, 567 U.S. at -, 132 S.Ct. at 2465, 183 L.Ed.2d at 420.
Nor could it be. As the background of this case demonstrates, a juvenile’s impetuosity can lead them to commit not only *99 serious crimes, but considerably pettier crimes as well. Although Desirae Pearson was a participant of a senseless evening of crime — all while stopping in the middle to enjoy a milk shake with her boyfriend— she also committed theft in the fifth degree at several other times during her youth. Can we honestly say, as a matter of law, that the transient immaturity of Pearson’s youth played no part at all in the commission of these lesser offenses, decreasing her culpability? The answer, of course, is that we cannot.
Thus, the juvenile offender’s decreased culpability plays a role in the commission of both grievous and petty crimes. Notably, even Chief Justice Roberts’s dissenting opinion sensed Milleds reasoning applies well beyond the context of homicide and calls into question a number of current practices, such as trying juveniles as adults and sentencing juveniles according to mandatory mínimums. See id. at -, 132 S.Ct. at 2482, 188 L.Ed.2d at 487-38 (Roberts, C.J., dissenting). It may be natural to assume the stakes are simply lower regarding the latter category of crimes, but denying juveniles who commit lesser crimes the protections afforded in Miller denies them their rights under the Eighth Amendment and article I, section 17 of the Iowa Constitution no less than denying a juvenile who commits a considerably more serious crime the very same protections.
The court’s holding is limited to the bizarre facts of this case — both Pearson’s senseless and violent, though nonhomici-dal, crime spree and the district court’s approach during sentencing. After all, Pearson somehow faced more time in prison without the possibility of parole than all offenders except a juvenile convicted of first-degree murder. See Iowa Code § 902.1(2) (Supp. 2011). Consequently, Pearson’s constitutional claim prevails under even the narrowest step forward in our jurisprudence.
Thus, wisely, the decision today takes a modest, incremental step, one with which I totally agree. Yet, our understanding of adolescent neuroscience and our approach to juvenile justice are rapidly evolving. Children are indeed different for the purposes of criminal sentencing. See Miller, 567 U.S. at -, 132 S.Ct. at 2464, 183 L.Ed.2d at 418 (majority opinion). The full breadth of the protections articulated in Roper, Graham, and Miller, as well as our own trilogy of cases we decide today, may yet reach further towards justice. We leave that conclusion for another day. In the meantime, these cases should be instructive to all judges today that the Miller factors should be applied to all juveniles sentenced as adults regardless of the crime. As the Attorney General’s National Task Force on Children Exposed to Violence stated in a thoughtful and detailed policy recommendation: “We should stop treating juvenile offenders as if they were adults, prosecuting them as adults in adult courts, incarcerating them as adults, and sentencing them to harsh punishments that ignore their capacity to grow.” Office of Juvenile Justice & Delinquency Prevention, U.S. Dep’t of Justice, Report of the Attorney General’s National Task Force on Children Exposed to Violence § 6.9, at 189 (2012). In other words, applying the teachings of Miller irrespective of the crime or sentence is simply the right thing to do, whether or not required by our Constitution.

. Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

. Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005).